## APPEAL OF PETER BREIDT CO.

Docket No. 1841.    Submitted May 11, 1925.    Decided November 6, 1925.

Deductions for obsolescence of tangible and intangible property disallowed.

*Parry J. Barnes, C. P. A.*, for the taxpayer.
*M. N. Fisher, Esq.*, for the Commissioner.

Before IVINS,[1] MARQUETTE, and MORRIS.

This appeal is from the determination of deficiencies in income and profits taxes for the years 1918 and 1919 in the aggregate amount of $11,913.43.

The question is whether the taxpayer is entitled to a deduction for obsolescence due to prohibition, of the tangible and intangible property used in its brewery business.

### FINDINGS OF FACT.

The taxpayer is a New Jersey corporation with principal office located in Elizabeth.

Prior to 1919 the taxpayer was engaged in the manufacture of beer, and about 90 per cent of its business was in bulk or keg sales, with about 10 per cent in bottled goods.

In 1917 it foresaw the probability of prohibition and expended $175,000 in the construction of a bottle shop, and engaged a brewmaster from Denmark for the purpose of developing the manufacture of low-percentage beer.

The taxpayer ceased selling beer on January 16, 1920, and thereafter engaged exclusively in the manufacture of near beer, ginger ale, and other soft drinks. In the new business the taxpayer had to develop a new line of customers, as the sale of beer had been largely to saloons.

The taxpayer continued to sell its products in keg lots but in diminishing proportions, the bottled goods correspondingly increasing. The sales in kegs were:

| | | | |
|---|---|---|---|
| 1916 | 113,722 | 1920 | 54,403 |
| 1917 | 104,229 | 1921 | 25,103 |
| 1918 | 88,109 | 1922 | 13,299 |
| 1919 | 69,408 | | |

When the taxpayer made the change in 1917 it required no different equipment for the manufacture of near beer from that which it had used for beer. It was not necessary to discard any of the

---

[1] This decision was prepared during Mr. Ivins's term of office.

equipment, machinery, or other assets so used in the manufacture of beer.

The Commissioner disallowed a deduction in 1919 for obsolescence of good will in the amount of $106,766.76, and determined the net income of the taxpayer to be:

1918 _____ $72,575.21
1919 _____ 97,578.60

The net book value at December 31, 1923, of the tangible property of the taxpayer was $498,836.91, after deducting depreciation and obsolescence allowed by the Commissioner for 1918 and 1919 in the amount of $148,294.39. Those assets were sold in 1924, netting the taxpayer $284,800. The purchaser continued to manufacture near beer.

The net profits of the taxpayer and the net tangible assets, as they appeared in the taxpayer's general ledgers, were:

| Year. | Net profits. | Net tangible assets. | Year. | Net profits. | Net tangible assets |
|---|---|---|---|---|---|
| 1906 | $73,702.78 | $321,795.36 | 1913 | $122,573.86 | $970,845.98 |
| 1907 | 111,717.21 | 395,098.14 | 1914 | 53,912.24 | 1,093,419.84 |
| 1908 | 107,469.65 | 506,815.35 | 1915 | 66,138.59 | 1,147,332.08 |
| 1909 | 125,733.18 | 614,285.00 | 1916 | 96,200.44 | 1,213,470.67 |
| 1910 | 94,611.57 | 740,018.18 | 1917 | 1 30,661.76 | 1,309,671.11 |
| 1911 | 56,784.65 | 834,629.75 | 1918 | 39,461.52 | 1,279,000.35 |
| 1912 | 79,431.58 | 891,414.40 | 1919 | 1 1,461.58 | 1,308,288.97 |

1 Loss.

The Commissioner determined deficiencies for 1918 of $3,630.51 and for 1919 of $8,282.94.

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

MARQUETTE: This appeal presents two phases of the question of the obsolescence of brewery property due to prohibition. Many material elements were lacking in the proof as submitted.

The gist of the taxpayer's contention is that there should be no deficiencies in tax for 1918 and 1919 because the property was sold in 1924 at a figure some $200,000 below the 1923 book value of the physical assets. The proof, however, has not adequately explained what appears to be a 1924 loss, as a 1918 and 1919 deduction for obsolescence. How far prohibition was the primary cause of that loss, and the period over which the loss should be spread, we are unable to conclude from the evidence submitted.

The taxpayer showed the earnings and tangible assets according to its books for the years 1906 to 1919, inclusive. Taking the seven years from 1906 to 1912, inclusive, the taxpayer computed the average earnings to be $92,778.66 and the average book value of tangible property to be $614,865.16. It then applied an 8 per cent rate of return on the average tangible property, giving $49,189.21, which it deducted from the $92,778.66. The resultant ($43,589.45) the taxpayer capitalized at 15 per cent, giving a value for intangibles of $290,596.30. The latter figure the taxpayer contends was the entire value of its good will on March 1, 1913. It then urges that amount as proper for proration as follows:

| | |
|---|---|
| 1918 | $136,023.80 |
| 1919 | 148,389.60 |
| 1920 | 6,182.90 |
| Total | 290,596.30 |

Likewise, it prorates the 1924 difference between tangible property and sales price as follows:

| | |
|---|---|
| 1918 | $100,187.49 |
| 1919 | 109,295.44 |
| 1920 | 4,553.98 |
| Total | 214,036.91 |

The theory applied by the taxpayer is that prohibition caused the loss by obsolescence over the period from January 31, 1918, to January 16, 1920.

The taxpayer's argument is predicated upon a basis which we can not accept without connecting proof. It does not necessarily follow that prohibition was the sole cause of the loss in the 1913 value of good will and in the 1923 value of the tangible property.

The further application by us of the taxpayer's method of determining the 1913 good-will value shows the following computations:

| | Seven-year averages | | 8 per cent return on tangibles | Capitalized balance, 15 per cent |
|---|---|---|---|---|
| | Average earnings | Average tangibles | | |
| 1906–1912 | $92,778.66 | $614,865.16 | $49,189.21 | $290,596.30 |
| 1907–1913 | 99,760.24 | 707,586.68 | 56,606.93 | 287,688.73 |
| 1908–1914 | 91,502.39 | 807,346.93 | 64,587.75 | 179,430.93 |
| 1909–1915 | 85,597.95 | 898,849.32 | 72,007.95 | 90,600.00 |
| 1910–1916 | 81,378.99 | 984,447.27 | 78,755.78 | 17,488.06 |
| 1911–1917 | 63,482.80 | 1,065,826.26 | 85,266.10 | None. |

Accordingly, it follows that, if the taxpayer's premise be correct, the entire value of good will had evaporated prior to 1918. In this computation we have used the 8 per cent rate suggested by the tax-

payer, and its figures and rates speak for themselves. There must have been a cause for the reduction in good will value other than national prohibition, since that value had entirely disappeared prior to 1918. The events intervening between March 1, 1913, and January 1, 1918, can not be disregarded. They prove to be quite material in this appeal, showing, as they do, that any loss in the good will value as it existed on March 1, 1913, had occurred prior to the time when national prohibition began to have a causative effect.

There remains for consideration the question of the obsolescence of tangibles due to prohibition. The taxpayer sold its property in 1924 for $284,800, net, or $214,036.91 below the then book value of the property. For four years the taxpayer had engaged in the near beer and soft drink business. That was the business which was sold, and not the beer business. Yet, the taxpayer contends that the loss is retroactive to the years 1918, 1919, and 1920, and that the loss was due to prohibition.

Upon the evidence, the only change made in the taxpayer's business, when it transferred its activity from beer to soft drinks and near beer, was the enlargement of its bottling department. That occurred in 1917. The identical machinery and equipment were used after prohibition as before. The identical machinery and equipment were sold in 1924 for continued use by the purchaser in the near beer and soft drink business. How can we say there was obsolescence of property when it was actually used and sold to be used? "Obsolescent is the state or process of becoming obsolete." *Appeal of Columbia Malting Co.*, 1 B. T. A. 999. A reduction in value does not necessarily prove the property to be obsolete or obsolescent, and no evidence was submitted in this appeal to prove obsolescence other than the comparison of the 1924 sales price with the 1923 book values. That evidence is not sufficient.